WILLIAM SIMS,

        Plaintiff,

v.                                  Case No. 3:18-cv-892-J-34JBT

ALEXIS FIGUEROA,

        Defendant.

_____

## **ORDER**

### **I. Status**

Plaintiff William Sims, an inmate of the Florida penal system, initiated this action on July 20, 2018, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1) with exhibits (Doc. 1-1 at 1-8). In the Complaint, Sims names Dr. Alexis Figueroa, M.D., as the Defendant. He asserts that Defendant Figueroa was deliberately indifferent to his serious medical needs. As relief, Sims seeks compensatory and punitive damages as well as injunctive relief. This matter is before the Court on Defendant Figueroa's Motion to Dismiss (Motion; Doc. 8). The Court advised Sims that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter, and gave him an opportunity to respond. See Order (Doc. 5). Plaintiff filed a response in opposition to the Motion, see Declaration in Opposition to Defendant's Motion to Dismiss (Response; Doc. 14), and the Motion is ripe for review.

## II. Plaintiff's Allegations[1]

As to the underlying facts of his claims, Sims asserts that he had a colonoscopy on August 16, 2017, with follow-up instructions to return in eight weeks. <u>See</u> Complaint at 4. He states that he experienced "gross rectal bleeding" within a few days, and was given "a dose of magnesia." <u>Id.</u> He avers that the Florida Department of Corrections (FDOC) transferred him to Suwannee Correctional Institution Annex (SCIA) on August 30, 2017. <u>See</u> <u>id.</u> According to Sims, he informed Defendant Figueroa ("the primary health care provider" at SCIA) about his "ongoing rectal bleeding" on September 8th, and Figueroa advised that he would refer Sims to a gastroenterologist for a consultation. <u>See</u> <u>id.</u> Sims maintains that he had an "outside appointment" concerning his prostate cancer with Dr. Montoya (an oncologist) on October 12th, at which time he informed Montoya about his rectal bleeding. <u>Id.</u> According to Sims, Montoya performed a rectal examination, determined he had rectal bleeding, and ordered a gastroenterology consultation. <u>See</u> <u>id.</u> at 4-5. He states that Defendant Figueroa advised Sims that he would

---

[1] In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. <u>Miljkovic v. Shafritz and Dinkin, P.A.</u>, 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved.

not refer him to a gastroenterologist because he had "his own treatment plan" for Sims. Id. at 5.

Sims avers that he accessed sick call at the institution on October 31, November 3, 18, and 21, and December 5 before he received "any form of medical treatment." Id. He asserts that Defendant Figueroa saw him in mid-December 2017, and prescribed a stool softener, fiber laxative, and hydrocortisone. See id. According to Sims, there was no follow-up appointment, but instead Figueroa just renewed the medications. See id. He avers that Dr. Montoya saw him on January 18, 2018, and again ordered that he see a gastroenterologist. See id. Sims declares that he continued to complain about rectal bleeding and pain, "but did not receive any meaningful treatment." Id. He states that Montoya was "furious" when he saw him on July 5th because Sims had not seen a gastroenterologist. Id. at 6. Sims proclaims that Montoya informed him that Centurion "was trying to save money," instead of providing adequate medical care. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the

plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply

4

"are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[2] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

---

[2] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

## IV. Summary of the Arguments

In the Motion, Defendant Figueroa requests dismissal of Sims' claims against him because Sims failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant 42 U.S.C. § 1983 lawsuit. See Motion at 4-7. Next, Figueroa argues that Sims failed to state a plausible Eighth Amendment claim against him, see id. at 7-9, and he is entitled to qualified immunity, see id. at 9-10. He also asserts that the Eleventh Amendment bars Sims' claim for monetary damages against him in his official capacity. See id. at 10. Finally, he maintains that Sims is not entitled to compensatory and punitive damages under 42 U.S.C. § 1997e(e) because he has not alleged any physical injury resulting from Defendant's acts and/or omissions. See id. at 10-11. In response to the Motion, Sims re-asserts the facts underlying his claims, and states that he exhausted his administrative remedies before filing the Complaint in this Court. See Response.

## V. Exhaustion of Administrative Remedies

### 1. Exhaustion

The PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before filing an action under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Sims is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007).

Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[3] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

---

[3] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss, or be treated as such if raised in a summary judgment motion. Bryant, 530 F.3d at 1374-75 (citation omitted). The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[4] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

---

[4] Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015); <u>see</u> <u>Pavao v. Sims</u>, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

## 2. Florida's Prison Grievance Procedure

The FDOC provides an internal grievance procedure for its inmates. <u>See</u> FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> FLA. ADMIN. CODE r. 33-103.007. However, under specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> FLA. ADMIN. CODE r. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the Secretary. <u>See</u> FLA. ADMIN. CODE r. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Generally, the following time limits are applicable. Informal grievances must be received within twenty days from the date on which the incident or action that is the subject of the grievance occurred. <u>See</u> FLA. ADMIN. CODE r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> FLA. ADMIN. CODE r. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. <u>See</u> FLA. ADMIN. CODE r. 33-103.011(1)(c). Rule 33-103.011(2) provides:

> An extension of the above-stated time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority as defined in paragraphs 33-103.002(15)((b) and (c), F.A.C., or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in rule 33-103.014, F.A.C.

FLA. ADMIN. CODE r. 33-103.011(2). Additionally, Rule 33-103.011(4) states:

> The time limit for responding to grievances and appeals may be extended for a reasonable period agreeable to both parties if the extension is agreed to in writing by the inmate. Unless the grievant has agreed in

writing to an extension, expiration of a time
limit at any step in the process shall entitle
the complainant to proceed to the next step of
the grievance process. If this occurs, the
complainant must clearly indicate this fact
when filing at the next step. If the inmate
does not agree to an extension of time at the
central office level of review, he shall be
entitled to proceed with judicial remedies as
he would have exhausted his administrative
remedies. The Bureau of Policy Management and
Inmate Appeals will nevertheless ensure that
the grievance is investigated and responded to
even though an extension has not been agreed
to by the inmate.

FLA. ADMIN. CODE r. 33-103.011(4).

According to Rule 33-103.014, an informal grievance, formal
grievance, direct grievance, or grievance appeal "may be returned
to the inmate without further processing if, following a review of
the grievance, one or more . . . conditions are found to exist."
FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated
list as "the only reasons for returning a grievance without a
response on the merits." See FLA. ADMIN. CODE r. 33-103.014(1)(a)-
(y). Some of the reasons for returning a grievance are as follows:
untimeliness; the grievance "addresses more than one issue or
complaint" or "is so broad, general or vague in nature that it
cannot be clearly investigated, evaluated, and responded to" or "is
not written legibly and cannot be clearly understood" or is a
supplement to a previously-submitted grievance that has been
accepted for review; and the inmate "did not provide a valid reason
for by-passing the previous levels of review as required or the

11

reason provided is not acceptable," or "used more than two (2) additional narrative pages." See FLA. ADMIN. CODE r. 33-103.014(1)(a), (b), (c), (d), (f), (h), (q), (t), (u).

### 3. Sims' Exhaustion Efforts

Sims submitted a Request for Administrative Remedy or Appeal (Log #1712-231-057), dated December 12, 2017, to the Warden. See id. at 3-4. In the grievance, Sims stated that he had rectal bleeding and needed a gastroenterology appointment. See id. Dr. Cruz, M.D. denied the formal grievance on December 27, 2017, stating in pertinent part:

> [Y]our request for administrative remedy or appeal has been received, reviewed and evaluated[.]
>
> [F]urther investigation into your grievance reveals the following:
>
> You are being followed in Chronic Clinic for you[r] medical condition. You have been seen in sick calls and were referred to the MD and seen on 12/14/17 to address these concerns. You have a pending consult to Oncology to further address the bleeding related to your history of prostate cancer. You have signed the consult and an appointment is pending soon. If you have any further questions or concerns you may address them with medical by access[ing] sick call. Watch for call out.
>
> For [the] reason above[,] this . . . grievance has been denied.

Id. at 5. The FDOC mailed a copy of the response to Sims on December 28th. See id. Sims did not appeal the FDOC's denial.

Next, Sims submitted a Request for Administrative Remedy or Appeal (Log #1802-231-103), dated February 23, 2018, to the Warden. See id. at 1. In the grievance, Sims maintained that Figueroa failed to follow Dr. Montoya's order that Sims consult with a gastroenterologist. See id. Dr. Cruz denied the grievance on March 12, 2018, stating in pertinent part:

> Your request for Administrative Remedy or Appeal has been received, reviewed & evaluated.
>
> Investigation into your grievance reveals the following:
>
> There is no indication that you have been denied access to medical or denied medical care. You may not agree with the treatment regimen and you have the right to refuse treatment at any time, but that does not mean that you are not being provided adequate care. It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing, including specialty consults, medication prescriptions, diagnostic testing, lab work, or passes. Noted in your chart on 1/20/18 is not from an appointment with you[.] [I]t is a record review by the MD with notes of his review of your visit with oncology. Noting he had previously discussed your rectal bleeding with you and that you would be followed up [o]n [s]ite. Recommendations from outside visits are just that, Recommendations, not orders. The staff MD reviews the notes and determines the plan of treatment and care. You are followed in Chronic Clinic on a regular basis with appointments pending. If you have medical concerns, questions or issues you may access sick call to have them addressed. Watch for call outs.
>
> Based on the foregoing[,] your grievance has been denied.

13

_Id._ at 2 (capitalization deleted). The FDOC mailed a copy of the response to Sims the next day (March 13, 2018). _See id._ Sims did not receive his copy of the FDOC response until ten days later (March 23, 2018). _See id._ Sims appealed the FDOC's denial to the Secretary. _See id._ at 6, Request for Administrative Remedy or Appeal (Log #18-6-13953), dated March 25, 2018. On the administrative appeal form, Sims explained that his appeal was timely filed based on the dormitory sergeant's handwritten notation on Sims' copy of the FDOC response stating that Sims received the FDOC response on March 23, 2018. _See id._ The FDOC Inmate Grievance Appeals received Sims' appeal on March 30, 2018, _see id._, and returned the appeal without action on May 15, 2018, stating that appeals must be received in the FDOC Secretary's Office within fifteen days (March 27) of the date of the institutional response (March 12). _Id._ at 8.

As to the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> District courts first should compare the factual allegations in the motion to dismiss and those in the prisoner's response and, where there is a conflict, accept the prisoner's view of the facts as true. "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." _Id._[5]

---

[5] _Whatley_, 802 F.3d at 1209.

Pavao, 679 F. App'x at 823-24. Defendant Figueroa maintains that Sims failed to properly exhaust his administrative remedies as to the deliberate indifference claim against him before filing this § 1983 lawsuit. See Motion 4-7. He states that Sims failed to timely appeal the FDOC's March 12th denial of his formal grievance. See id. at 6-7. In support of his position, Figueroa refers to Sims' exhibits attached to the Complaint. See Doc. 1-1 at 2, 6. Sims asserts that he exhausted his administrative remedies, see Response at 5, and also refers to his exhibits, see Docs. 1-1 at 1-8; 14-3 at 1-6, to support his position. He proclaims that he timely filed his appeal to the FDOC Secretary because the FDOC received it on March 30, which is well within fifteen days of when he received the FDOC's denial of his formal grievance (March 23). See Doc. 1-1 at 6. Accepting Sims' view of the facts as true, a dismissal of the claims against Defendant Figueroa for lack of exhaustion is not warranted. Thus, the Court proceeds to the second step in the two-part process where the Court considers Defendant Figueroa's arguments regarding exhaustion and makes findings of fact.

To exhaust his administrative remedies, Sims "was required to appeal the denial of his formal grievance within fifteen days of the date he received notice that the formal grievance was denied." Jackson v. Griffin, 762 F. App'x 744, 745 (11th Cir. 2019) (per curiam) (citing FLA. ADMIN. CODE r. 33-103.011(1)(c) (providing that such appeals "must be received within 15 calendar days from

the date the response to the formal grievance is returned to the inmate")). Thus, the Court focuses on Sims' appeal of the FDOC's March 12, 2018 denial of his formal grievance. Receiving his copy of the FDOC's denial on March 23, 2018, Sims presumably knew that the remaining time to submit a timely appeal was impending. Accordingly, within a few days, Sims handwrote the date of March 25, 2018, next to his signature on the appeal form. See Doc. 1-1 at 6. The bottom portion of the form showing a receipt of the appeal by a prison official as to when Sims submitted the appeal and when it was received for forwarding to the Central Office was never completed. See id. Nevertheless, a date stamp at the top of the form reflects that the FDOC received Sims' appeal on March 30, 2018. Notably, in returning the appeal without action, the FDOC failed to account for the fact that Sims had not received his copy of the FDOC's March 12th denial of his formal grievance until March 23, 2018. In light of the evidence available to the Court, the Court finds that Sims timely submitted his appeal of the FDOC's denial of his formal grievance, and therefore, he has properly exhausted his administrative remedies. Thus, Defendant's Motion is due to be denied.

## VI. Eighth Amendment Deliberate Indifference Claim

Sims asserts that Defendant Figueroa violated his Eighth Amendment right when he was deliberately indifferent to his medical needs. Sims provides a detailed chronology of the events upon which

he bases his deliberate indifference medical claim against Defendant Figueroa. See Complaint at 4-6; Response at 1-6. The central theme of his narratives is that Defendant Figueroa failed to timely and properly treat his rectal bleeding from August 2017 through July 2018. The Eleventh Circuit has explained the requirements for a claim of constitutionally inadequate care:

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." Farmer, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[6] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. Id. However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. Hudson, 503 U.S. at 8-9, 112 S.Ct. at 1000.[7] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. Farmer, 511 U.S. at 828, 114 S.Ct. at 1974 (quotation and citation omitted); Wilson, 501 U.S. at 303, 111 S.Ct. at 2327.[8]

Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351

---

[6] Farmer v. Brennan, 511 U.S. 825 (1994).

[7] Hudson v. McMillian, 503 U.S. 1 (1992).

[8] Wilson v. Seiter, 501 U.S. 294 (1991).

17

(11th Cir. 2004) (quoting <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Id.</u> (citing <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Id.</u> (citation and internal quotations marks omitted).

<u>Brown</u>, 387 F.3d at 1351. Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." <u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing <u>Farrow</u>, 320 F.3d at 1245); <u>Lane v. Philbin</u>, 835 F.3d 1302, 1308 (11th Cir. 2016) (setting forth the three components) (citing <u>Farrow</u>, 320 F.3d at 1245).

In <u>Estelle</u>[9], the Supreme Court established that "deliberate indifference"

---

[9] <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).

> entails more than mere negligence. _Estelle_,
> 429 U.S. at 106, 97 S.Ct. 285; _Farmer_, 511
> U.S. at 835, 114 S.Ct. 1970. The Supreme Court
> clarified the "deliberate indifference"
> standard in _Farmer_ by holding that a prison
> official cannot be found deliberately
> indifferent under the Eighth Amendment "unless
> the official knows of and disregards an
> excessive risk to inmate health or safety; the
> official must both be aware of facts from
> which the inference could be drawn that a
> substantial risk of serious harm exists, and
> he must also draw the inference." _Farmer_, 511
> U.S. at 837, 114 S.Ct. 1970 (emphasis added).
> In interpreting _Farmer_ and _Estelle_, this Court
> explained in _McElligott_[10] that "deliberate
> indifference has three components: (1)
> subjective knowledge of a risk of serious
> harm; (2) disregard of that risk; (3) by
> conduct that is more than mere negligence."
> _McElligott_, 182 F.3d at 1255; _Taylor_,[11] 221
> F.3d at 1258 (stating that defendant must have
> subjective awareness of an "objectively
> serious need" and that his response must
> constitute "an objectively insufficient
> response to that need").

_Farrow_, 320 F.3d at 1245-46. Notably, the Supreme Court has stated

that a plaintiff may demonstrate the deliberate indifference of

prison officials by showing that they intentionally interfered with

prescribed treatment or intentionally denied access to medical

care. _See_ _Estelle_, 429 U.S. at 104-05. Reading Sims' Complaint

liberally, as this Court must do, he provides sufficient facts to

state a cognizable Eighth Amendment deliberate indifference claim

against Defendant Figueroa, particularly given his allegations

---

[10] _McElligott v. Foley_, 182 F.3d 1248 (11th Cir. 1999).

[11] _Taylor v. Adams_, 221 F.3d 1254 (11th Cir. 2000).

regarding Dr. Montoya's statements. Thus, Defendant Figueroa's Motion is due to be denied as to Sims' Eighth Amendment claim against him.

## VII. Qualified Immunity

Defendant Figueroa alternatively asserts that he is entitled to qualified immunity. As to qualified immunity, the Eleventh Circuit has stated:

> To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

> Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [the plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other

> grounds by <u>Pearson</u>, 555 U.S. 223, 129 S.Ct.
> 808. We may decide these issues in either
> order, but, to survive a qualified-immunity
> defense, [the plaintiff] must satisfy both
> showings. <u>Maddox</u>, 727 F.3d at 1120-21
> (citation omitted).

<u>Jones v. Fransen</u>, 857 F.3d 843, 850-51 (11th Cir. 2017).

The Eleventh Circuit also has set forth the proper analysis to be used by a district court when considering a motion to dismiss based on qualified immunity.

> When presented with the officers' motions to
> dismiss, both our precedent and precedent from
> the Supreme Court instruct the district court
> to analyze whether, taking [Plaintiff]'s
> allegations as true, the . . . complaint
> asserted a violation of a clearly established
> constitutional right. <u>See</u> <u>Chesser v. Sparks</u>,
> 248 F.3d 1117, 1121 (11th Cir. 2001) ("[T]he
> [qualified immunity] defense may be raised and
> considered on a motion to dismiss; the motion
> will be granted if the 'complaint fails to
> allege the violation of a clearly established
> constitutional right.'") (quoting <u>Williams</u>,
> 102 F.3d at 1182)[12]; <u>Santamorena v. Ga.</u>
> <u>Military College</u>, 147 F.3d 1337, 1342 (11th
> Cir. 1998) (affirming grant of motion to
> dismiss on qualified immunity grounds because
> the "complaint fail[ed] to allege the
> violation of a clearly established
> constitutional right"). <u>See</u> <u>also</u> <u>Siegert v.</u>
> <u>Gilley</u>, 500 U.S. 226, 232, 111 S.Ct. 1789, 114
> L.Ed.2d 277 (1991) ("A necessary concomitant
> to the determination of whether the
> constitutional right asserted by a plaintiff
> is 'clearly established' at the time the
> defendant acted is the determination of
> whether the plaintiff has asserted a violation
> of a constitutional right at all. Decision of
> this purely legal question permits courts

---

[12] <u>Williams v. Ala. State Univ.</u>, 102 F.3d 1179, 1182 (11th Cir. 1997).

> expeditiously to weed out suits which fail the
> test without requiring a defendant who rightly
> claims qualified immunity to engage in
> expensive and time consuming preparation to
> defend the suit on its merits.").  .  .  .

Joseph v. Gee, 708 F. App'x 642, 643-44 (11th Cir. 2018) (per curiam).

In the Motion, Defendant Figueroa asserts that he is entitled to qualified immunity because he did not violate Sims' Eighth Amendment right. However, this assertion is unavailing. The Court has determined that Sims has stated a plausible Eighth Amendment claim against Defendant Figueroa, and therefore, Defendant Figueroa is not entitled to qualified immunity at this stage of the litigation. Accordingly, the Motion is due to be denied to the extent it is based on qualified immunity.

## VIII. Eleventh Amendment

To the extent Defendant asserts that he is entitled to Eleventh Amendment immunity, see Motion at 10, the Court agrees.

> The Eleventh Amendment provides that
> "[t]he Judicial power of the United States
> shall not be construed to extend to any suit
> in law or equity, commenced or prosecuted
> against one of the United States by Citizens
> of another State, or by Citizens or Subjects
> of any Foreign State." U.S. Const. amend. XI.
> It is well established that, in the absence of
> consent, "a suit in which the State or one of
> its agencies or departments is named as the
> defendant is proscribed by the Eleventh
> Amendment." Papasan v. Allain, 478 U.S. 265,
> 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)
> (quotation omitted). The Eleventh Amendment
> also prohibits suits against state officials
> where the state is the real party in interest,

> such that a plaintiff could not sue to have a
> state officer pay funds directly from the
> state treasury for the wrongful acts of the
> state. <u>Summit Med. Assocs., P.C. v. Pryor</u>, 180
> F.3d 1326, 1336 (11th Cir. 1999). . . .

<u>Hayes v. Sec'y, Fla. Dep't of Children & Families</u>, 563 F. App'x

701, 703 (11th Cir. 2014) (per curiam).

In <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986)

(per curium), the Eleventh Circuit noted:

> It is clear that Congress did not intend
> to abrogate a state's eleventh amendment
> immunity in section 1983 damage suits. <u>Quern
> v. Jordan</u>, 440 U.S. 332, 340-45, 99 S.Ct.
> 1139, 1144-45, 59 L.Ed.2d 358 (1979).
> Furthermore, after reviewing specific
> provisions of the Florida statutes, we
> recently concluded that Florida's limited
> waiver of sovereign immunity was not intended
> to encompass section 1983 suits for damages.
> <u>See</u> <u>Gamble</u>,[13] 779 F.2d at 1513-20.

Accordingly, in <u>Zatler</u>, the court found that the FDOC Secretary was

immune from suit in his official capacity. <u>Id.</u> Insofar as Sims may

be seeking monetary damages from Defendant in his official

capacity, the Eleventh Amendment bars suit. Therefore, Defendant's

Motion is due to be granted as to Sims' claim for monetary damages

from him in his official capacity.

## IX. Physical Injury Requirement
## 42 U.S.C. § 1997e(e)

Next, the Court turns to Defendant's assertion that Sims is

not entitled to compensatory and punitive damages under 42 U.S.C.

---

[13] <u>Gamble v. Fla. Dep't of Health & Rehab. Serv.</u>, 779 F.2d 1509
(11th Cir. 1986).

§ 1997e(e) because he has not alleged any physical injuries that are more than de minimis resulting from Defendant's acts and/or omissions. In <u>Brooks v. Warden</u>, 800 F.3d 1295 (11th Cir. 2015), the Eleventh Circuit addressed the availability of compensatory and punitive damages as well as nominal damages in suits brought by prisoners under § 1983. The Eleventh Circuit stated:

> The PLRA places substantial restrictions on the judicial relief that prisoners can seek, with the goal of "reduc[ing] the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1195 (11th Cir. 2011) (quoting <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002)). The section of the Act at issue here, 42 U.S.C. § 1997e(e), reads this way:
>
>> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act....
>
> This Court has held that § 1997e(e) applies to all federal civil actions, including constitutional claims brought under § 1983. <u>See</u> <u>Harris v. Garner</u> (<u>Harris II</u>), 216 F.3d 970, 984-85 (11th Cir. 2000) (en banc)....
>
> In this case, [Plaintiff] did not allege any physical injury . . . . Nevertheless, he sought "compensatory . . . punitive, and nominal damages" from [Defendant]. **Under the statute and our caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury.** <u>See</u> <u>Al-Amin</u>,

> 637 F.3d at 1198 (punitive); Harris v. Garner
> (Harris I), 190 F.3d 1279, 1286 (11th Cir.
> 1999) (compensatory), reh'g en banc granted
> and opinion vacated, 197 F.3d 1059 (11th Cir.
> 1999), opinion reinstated in relevant part,
> 216 F.3d 970. However, we have never had the
> opportunity in a published opinion to settle
> the availability of nominal damages under the
> PLRA. We do today, and we hold that nothing in
> § 1997e(e) prevents a prisoner from recovering
> nominal damages for a constitutional violation
> without a showing of physical injury.

Brooks, 800 F.3d at 1307-08 (emphasis added). Thus, to satisfy §

1997e(e), a prisoner must assert physical injury that is more than

de minimis. However, the injury does not need to be significant.

See Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557

(11th Cir. 2014) (citation omitted); Dixon v. Toole, 225 F. App'x

797, 799 (11th Cir. 2007).

Taking Sims' allegations as to his injuries as true, he

asserts physical injuries that are greater than de minimis. Sims

complains about rectal bleeding over an extended period of time due

to Defendant's alleged failure either to refer him to an outside

specialist or timely and properly treat him at the institutional

level. See Complaint at 4-6. Sims' assertions, including his pain

and discomfort that ultimately resulted in multiple sick call

visits about the ongoing rectal bleeding, cross § 1997e(e)'s de

minimis threshold. See Thompson, 551 F. App'x at 557 n.3

(describing an approach of asking whether the injury would require

a free world person to visit a doctor or emergency room) (citing

Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997)). Thus,

Defendant's Motion is due to be denied to the extent that the Court finds Sims' request for monetary damages is not precluded under § 1997e(e) because he alleges that he suffered physical injuries that are plausibly greater than de minimis.

Therefore, it is now

**ORDERED**:

1.    Defendant Figueroa's Motion to Dismiss (Doc. 8) is **PARTIALLY GRANTED** as to Sims' claim for monetary damages from him in his official capacity. Otherwise, the Motion is **DENIED**.

2.    Defendant Figueroa, **no later than September 27, 2019,** must answer or otherwise respond to the Complaint.

3.    The parties shall conduct discovery so the due date of any discovery requested is no later than **January 7, 2020.** Any motions relating to discovery shall be filed by **January 21, 2020.**

4.    All motions to dismiss and/or for summary judgment shall be filed by **February 25, 2020.**[14] This deadline is also applicable to the filing of any motions or the raising of any affirmative defenses based on qualified immunity.

5.    Responses to any motions to dismiss and/or for summary judgment shall be filed by **March 25, 2020.**

---

[14] Any DVDs submitted as exhibits to a summary judgment motion should not contain a sticker-type label. Such labels inhibit the Court's ability to view the video footage. The case number and other relevant information should be written with a black marker on the DVD itself. Additionally, the Court requires the complete transcript of any deposition submitted as an exhibit.

6. The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendants are encouraged to maintain a realistic approach in making and/or considering any settlement offers. If the parties are unable to settle the case privately, and want a Magistrate Judge to conduct a settlement conference, they should notify the Court.

7. As to the taking of Plaintiff's deposition, if necessary, the Court grants permission to Defendant's counsel. Defendant's counsel must contact the Warden of Plaintiff's institution to arrange an appropriate time and place for the deposition.

8. The Court expects strict compliance with the Court's deadlines.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of August, 2019.

MARCIA MORALES HOWARD
United States District Judge

sc 8/27
c:
William Sims, FDOC #381271
Counsel of Record